**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE VELAZQUEZ, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 12 C 04209 |
| v. | ) ) | Judge Edmond E. Chang |
| FAIR COLLECTIONS & OUTSOURCING, INC., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jose Velazquez filed an amended complaint, alleging that Defendant Fair Collections & Outsourcing, Inc. violated provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. R. 30, Am. Compl.[1] Specifically, Velazquez alleges that Fair Collections sent him two debt-collection letters that overshadowed his right to verify the debt within thirty days of the letter's receipt, in violation of § 1692g, and that its debt-collection agents made false representations when they used aliases to make collection phone calls in violation of §§ 1692e and 1692f. *Id.* ¶¶ 29, 31-39. Fair Collections now moves to dismiss the amended complaint under Federal Rule of Civil

---

[1]This Court has federal-question subject matter jurisdiction. 28 U.S.C. § 1331. Citations to the docket are indicated by "R." followed by the docket entry.

Procedure 12(b)(6) for failure to state a claim. R. 36, Def.'s Mot. Dismiss.[2] For the reasons stated below, the motion to dismiss is granted in part and denied in part.

## I. Background

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in Velazquez's favor. *Ashcroft v. al-Kidd*, —— U.S. ——, 131 S.Ct. 2074, 2079 (2011). In 2011, Velazquez had an outstanding debt arising from a residential lease, which was assigned or referred to Fair Collections, a debt-collection agency. Am. Compl. ¶¶ 4, 15, 16. Fair Collections' initial attempts to collect on the debt were made in the form of collection letters. *Id.* ¶¶ 17-19. But the first two letters were sent to an incorrect address and never reached Velazquez. *Id.* ¶ 19. On October 25, 2011, Fair Collections sent its first collection letter to Velazquez's correct address. *Id.* ¶ 17.[3] In bold-face text, and in a box in the upper right part of the October 25 letter, Fair Collections stated, "**Pay in full online**

---

[2] Velazquez's amended complaint seeks class-action status. On June 10, 2012, Velazquez filed a motion to preliminarily certify the class based on the original class- action complaint. R. 3. Rule 23(c) of the Federal Rules of Civil Procedure provides that the district court must address class certification "early" in the litigation and generally before addressing a motion directed at the merits. *See Bertrand v. Maram*, 495 F.3d 452, 455 (7th Cir.2007). But there is no fixed requirement that the court must always defer a decision on a Rule 12(b)(6) motion until after the court addresses class certification. The Seventh Circuit has said that Rule 23's preference for deciding class certification early-on is mostly for the defendant's protection, so defendants can ask for an earlier merits decision, which Fair Collections has done here. *Wiesmueller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008) (citing *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941-42 (7th Cir. 1995)).

[3] The October 25 letter, as well as a November 14 letter, were attached to the Amended Complaint, and were specifically referenced in Velazquez's allegations. *See* R. 30-1, Pl.'s Exhs. A and B. The Court therefore relies upon the letters in deciding this motion. Fed. R. Civ. P. 10(c).

**anytime**" and provided the address for its website. R. 30-1, Pl.'s Exh. A. In bold-face, slightly larger font above the body of the letter, Fair Collections wrote, **"Payment demand – $1624.50**." *Id.* At the bottom of the letter, in a font size matching the rest of the letter's text, Fair Collections printed a notice detailing Velazquez's right to seek validation of the debt (a verification of amount and source of the debt) within thirty days. *Id.*

On November 14—less than thirty days after the first letter's mailing—Fair Collections sent Velazquez a second collection letter. Am. Compl. ¶ 18. The same statement regarding **"Pay in full online anytime**" appeared in a bold-face text box, but there was no similar language about a "payment demand." R. 30-2, Pl.'s Exh. B. The letter also stated that Velazquez's account "has already been reported or is scheduled to be reported" to several national credit reporting bureaus (this was not in the first letter). *Id.* The second letter also told Velazquez that "this is a favorable time to clear your account." *Id.* Unlike the first letter, the second letter did not contain a notice informing Velazquez of his right to seek validation of the debt. *Id.* At the bottom of the second letter, in bold, Fair Collections instructed Velazquez to "SEE REVERSE SIDE FOR IMPORTANT INFORMATION REGARDING STATE AND FEDERAL LAWS AND YOUR RIGHTS." *Id.* The back of the letter also did not contain any information about the validation period. *Id.*

Fair Collections continued in its collection efforts by placing phone calls to Velazquez's cell phone. Am. Compl. ¶¶ 20, 21. On December 5 and December 7, 2011, Fair Collections agent Devon Paul Taylor called Velazquez, but identified himself as

3

"Andy Stone" or "Anthony Stone." Am. Compl. ¶¶ 32, 33. A couple of days later, on December 9, collections agent Elizabeth Diaz called Velazquez, but used the alias "Alicia Vera." *Id.* ¶ 34. And finally, in four collection calls to Velazquez in January and February 2012, collections agent Edward Smith used the alias "Mark Stein." *Id.* ¶¶ 35–38. The amended complaint provides few details about these collection calls, but there is no allegation that the collection agents attempted to hide the identity of Fair Collections, or the purpose for their call.

Velazquez filed his amended complaint on November 8, 2012, alleging multiple violations of the Fair Debt Collection Practices Act (FDCPA). First, he claims that the first and second collection letters violated 15 U.S.C. § 1692g, because they overshadowed his right to validate the debt within thirty days of the initial notice of collection. Am. Compl. ¶ 29. Second, Velazquez alleges that the debt-collection agents' use of aliases when making phone calls violated 15 U.S.C. § 1692e because the use of an alias is false, deceptive, or misleading. Am. Compl. ¶¶ 31, 39. In his response brief, Velazquez also contends that the use of aliases is an unfair means of collecting a debt in violation of 15 U.S.C. § 1692f. R. 39, Pl.'s Resp. at 5.[4] Fair Collections now moves to dismiss the entirely of Velazquez's amended complaint for failure to state a claim.

---

[4] Velazquez also cites to 15 U.S.C. § 1692d in his response, but without reference to a particular section of that provision or any explanation as to how the use of aliases is a practice that harasses, oppresses, or abuses a debtor. *See* Pl.'s Resp. at 5. Velazquez fails to develop an argument with respect to § 1692d, and it is therefore waived. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012).

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly,* 550 U.S. at 555-56); *see also McGowan v. Hulick,* 612 F.3d 636, 638 (7th Cir. 2010). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal,* 556 U.S. at 678–79.

5

### III. Analysis

Velazquez's amended complaint is divided into two counts—Count 1 is based on the collection letters and Count 2 is based on the phone calls that the agents placed using aliases. *See* Am. Compl. Fair Collections moves to dismiss both counts. Def.'s Mot. Dismiss. As explained below, Count 1 may proceed but Count 2 is dismissed.

### A.    The Collection Letters

In Count 1, Velazquez alleges that the collection letters to Velazquez violated 15 U.S.C. § 1692g because the letters overshadowed his right to seek validation of the debt within 30 days. Am. Compl. ¶¶ 22-29. Fair Collections asserts several arguments in support of its motion to dismiss the claim. First, Fair Collections contends that the first and second collection letters did not overshadow the thirty-day validation period because (a) neither contained a demand for payment at a specific time or within a time period before the expiration of the thirty-day period, and (b) both contained only language of "puffery." R. 37, Def.'s Br. at 6-8, 11. Focusing specifically on the second collection letter, Fair Collections argues that it did not violate the FDCPA because (a) sending a follow-up letter within the thirty-day validation period is proper under the FDCPA as long as it does not explicitly cut short the thirty-day validation period, and (b) stating that Fair Collections had reported or would report Velazquez to a credit reporting agency would not mislead even the least sophisticated consumer. *Id.* at 11.

Under § 1692g, debt collectors must include certain information with their initial communication to a debtor, such as the amount of the debt and the name of the creditor to whom the debt is owed. The initial communication must also contain:

> [A] statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector . . . .

15 U.S.C. § 1692g(a)(4).[5] To prevent activities by the debt collector that might mislead debtors concerning their right to seek validation of the debt, § 1692g also provides that "[a]ny collection activities and communication during the 30-day [validation] period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt . . . ." 15 U.S.C. § 1692g(b).

To determine whether a collection letter overshadows the thirty-day validation notice, courts in this Circuit apply an "unsophisticated consumer" standard. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 635 (7th Cir. 2012) (citation omitted). Under that standard, in conveying to the consumer his or her rights, the letter must be clear and comprehensible to an individual who is "uninformed, naïve, [and] trusting." *Veach v. Sheeks,* 316 F.3d 690, 693 (7th Cir. 2003). At the same time, however, the standard does *not* assume the consumer is someone without a rudimentary knowledge about the financial world or is incapable of making basic deductions and inferences. *Wahl v. Midland Credit Mgmt., Inc.,* 556 F.3d 643, 645 (7th Cir. 2009). Ultimately, a plaintiff must show that "a significant fraction of the

---

[5]The reference to "the thirty-day period" is § 1692g(a)(3)'s requirement that the initial communication state that the debt will be assumed valid unless the consumer disputes the debt's validity within thirty days.

population" would find the letter confusing in order to prove a violation of § 1692g(b). *Taylor v. Cavalry Inv., L.L.C.,* 365 F.3d 572, 574-75 (7th Cir. 2004).

Whether a collection letter confuses the unsophisticated consumer is a question of fact, *Evory v. RJM Acquisitions Funding L.L.C.,* 505 F.3d 769, 776 (7th Cir. 2007), but that does not mean FDCPA claims are exempt from dismissal motions. As a general rule, when a complaint alleges that a collection letter is confusing, the plaintiff has stated a recognizable legal claim and does not have to state more to survive a motion to dismiss. *McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 758-59 (7th Cir. 2006) (citations omitted). Having said that, a plaintiff fails to state a claim and dismissal *is* appropriate as a matter of law when it is "apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." *Taylor,* 365 F.3d at 574-75 (internal quotation marks and citations omitted). The Seventh Circuit has cautioned district courts to "tread carefully before holding that a letter is not confusing as a matter of law when ruling on a Rule 12(b)(6) motion because district judges are not good proxies for the unsophisticated consumer whose interest the statute protects." *McMillan*, 455 F.3d at 759 (internal quotation marks and citations omitted).

### 1. The First Collection Letter

In response to Fair Collections' motion to dismiss, Velazquez argues that the first letter alone overshadowed his right to request validation of the debt within thirty days because the bolded "Payment demand – $1624.50" and bolded text box stating

8

"Pay in full online anytime" would confuse an unsophisticated consumer about whether the right to seek validation truly exists. Pl.'s Resp. at 4. In support of his argument, Velazquez principally relies on *Jarzyna v. Home Properties, L.P.*, 763 F. Supp. 2d 742 (E.D. Pa. 2011). *Jarzyna* held that an identical letter from Fair Collections was sufficiently confusing as to the plaintiff's validation rights under § 1692g to withstand a motion to dismiss. 763 F. Supp. 2d at 748. The court reasoned that the bold text of "Payment demand – $1897.92" and bolded text box containing the words "Pay in full online anytime" could lead the least sophisticated consumer to believe that he had no right to dispute the debt and was required to pay it in full right away. *Id.*[6] *Jarzyna* concluded that the thirty-day validation notice at the bottom of the page, in "text much smaller than the demand," was overshadowed by the bold text demanding payment and requesting payment in full at anytime. *Id.*

---

[6] The Third Circuit evaluates FDCPA claims under the "least sophisticated consumer" standard. *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000). The least sophisticated consumer standard has been adopted by other circuits on the idea that it serves the goal of consumer-protection laws by protecting consumers of below-average sophistication or intelligence who are especially vulnerable to fraudulent schemes. *See Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). In *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994), the Seventh Circuit abandoned the label "least sophisticated" and adopted the "unsophisticated" consumer description of the standard. But the Seventh Circuit did not intend to create a new substantive standard. Rather, "the unsophisticated consumer standard is a distinction without much of a practical difference in application." *Avila v. Rubin*, 84 F.3d 222, 227 (7th Cir. 1996). "*Gammon* [did] not significantly change the *substance* of the 'least sophisticated consumer' standard as it had been routinely *applied* by courts. Instead, *Gammon* concluded that the term 'unsophisticated consumer' is a simpler and less confusing formulation of a standard designed to protect those of below-average sophistication or intelligence." *Id.* (emphasis in original) Because the "unsophisticated consumer" standard and the "least sophisticated consumer" standard are practically the same, the distinction does not distinguish *Jarzyna* from this case.

The Court disagrees with that holding. Even viewing the letter through the lens of the unsophisticated consumer, and also mindful of the admonition to beware of too-early dismissals in FDCPA cases, as a matter of law the initial collection letter complies with § 1692g, because it would not confuse "a significant fraction of the population." *Taylor,* 365 F.3d at 574 (internal quotation marks omitted). The notice explaining Velazquez's right to demand verification within thirty days is clearly visible on the front side of the letter, and the explanation is in a font size similar (indeed, it appears to be the same) to the text in the body of the letter. Pl.'s Exh. A. The explanation's font size is similar or the same as the "Pay in full online anytime" text, and although the explanation is smaller than the "Payment Demand" text, the explanation is easily read. *Id.* Where text describing the validation notice is "adequately readable and noticeable," even if less readable than the rest of the collection letter, it does not overshadow the debtor's validation right. *Sims v. GC Servs. L.P.*, 445 F.3d 959, 964 (7th Cir. 2006); *see also Jenkins v. Union Corp.*, 999 F. Supp 1120, 1131 (N.D. Ill. 1998) (holding notice complied with § 1692g, even though font size of validation notice was smaller than printing in body of letter, because the font size was "large enough to be easily read and sufficiently prominent to be noticed").

On its face, the first letter's "Payment demand – $1624.50" and request for the Velazquez to "Pay in full online anytime" is unlikely to confuse even an unsophisticated consumer about the right to validate the debt. These statements do not, for example, directly contradict the thirty-day validation period by demanding payment by a specific time before the thirty days or within a period shorter than thirty days. *See, e.g.,*

10

*Bartlett v. Heibl,* 128 F.3d 497, 501 (7th Cir. 1997) (telling debtor he must pay $316 within one week to prevent legal action contradicted validation notice); *Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir. 1996) (giving debtor ten days to pay before legal action would commence overshadowed validation notice). Nor does the letter explicitly demand immediate payment, which would create confusion about the thirty-day validation period. *See Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 2006) ("[T]o an unsophisticated person . . . the combination of a demand for prompt action with a notice that the recipient has 30 days to seek verification may produce befuddlement."). Rather, Fair Collections' payment "demand" and request for payment online "anytime" is in the nature of puffing, which is rhetoric designed to create a mood rather than communicate information or misinformation, and does not, standing alone, run afoul of § 1692g(b). *See, e.g.*, *Taylor*, 365 F.3d at 575 (urging debtor to "act now to satisfy this debt" does not overshadow validation notice); *Zemeckis,* 679 F.3d at 636 (suggesting that debtor "take action now" and call "today" does not contradict the validation period). And, after all, there is nothing wrong with Fair Collections "demand[ing]" payment and informing the consumer that payments may be made in full "online anytime." For these reasons, Fair Collections' first collection letter, standing alone, does not overshadow Velazquez's right to seek validation of his debt under § 1692g.

## 2. The Second Collection Letter

Although the first letter complies with § 1692g, the second collection letter, which was sent within the thirty-day validation period, requires its own analysis. To be clear, the validation period is not a grace period, and a debt collector is free to

demand payment and pursue collection efforts within the thirty days. *Bartlett*, 128 F.3d at 501.[7] Section 1692g simply requires debt collectors to include a validation notice in its *initial* communication to the debtor (or within five days of the initial communication). *See* 15 U.S.C. § 1692g(a). The provision does not specifically mandate that collection letters sent after the initial communication also include information about the validation period. Thus, a second letter sent within the thirty-day period that does not reprint or refer back to the debtor's right to request validation of the debt does not *automatically* overshadow the debtor's validation right. *See Durkin v. Equifax Check Servs., Inc.,* 406 F.3d 410, 417 (7th Cir. 2005) ("[N]ot every follow-up letter sent during the validation period must automatically reiterate the safe-harbor validation notice, refer back to that notice, or remind debtors about the validation period and the time remaining in that period. The mere absence of such reiterations . . . does not alone generate an unacceptable level of confusion . . . .").

That being said, the absence of a reprinted validation notice or reference to the debtor's right to request validation, *combined* with the specific text of a second letter, can create impermissible overshadowing or contradiction. *See id.* at 417 ("[T]he matter turns on whether the specific text [of follow-up collection letters] contains any impermissible overshadowing or contradiction with respect to the validation notice." (citation omitted)). Here, the second collection letter contains statements that can

---

[7]  Under Section 1692g(b), if a debtor disputes the debt or requests the name and address of the original creditor, then collection efforts must be suspended until the debt collector provides validation of the debt or the original creditor's information. 15 U.S.C. § 1692g(b).

overshadow the first letter's validation-right explanation, at least at this dismissal-motion stage. The second letter states that "Your account has already been reported or is scheduled to be reported" and that it is "a favorable time to clear your account." Pl.'s Exh. B. This text, combined with the absence of a validation notice, may lead the unsophisticated consumer to believe that right to validate the debt within thirty-days was cut short. In other words, upon receiving this second letter before the end of the thirty-day validation period, an unsophisticated consumer might believe that the dispute-time has ended early because the debt was already reported to credit reporting agencies.

The statement at the bottom of the second letter instructing the Velazquez to "SEE REVERSE SIDE FOR IMPORTANT INFORMATION REGARDING STATE AND FEDERAL LAWS AND YOUR RIGHTS" adds to the confusion. *Id.* Among the paragraphs of information on the backside of the second letter, there is no mention of the Velazquez's right to request validation of his debt within thirty days of the initial notice. *Id.* An unsophisticated consumer could reasonably believe that the information listed on the back of the letter is a complete list of rights, so the consumer could conclude that seeking validation of the debt within thirty days is no longer among those rights.

In support of its motion, Fair Collections relies on *Durkin*, 406 F.3d at 417, for the proposition that dismissal is required because the second letter did not contain any overt misinformation, apparent contradiction, or noticeable lack of clarity concerning the validation period. Def.'s Br. at 12. Fair Collections' reliance on *Durkin* is misplaced,

13

however, because *Durkin* was not considering a motion to dismiss. Rather, the parties there had filed cross-motions for summary judgment, and the district court denied the plaintiff's motion, but granted defendant's motion. *Durkin*, 406 F.3d at 412. One of the issues on appeal was whether the defendant's failure to include a validation notice in a follow-up collection letter warranted summary judgment *in favor* of the plaintiff. *Id.* at 416. *Durkin* affirmed the lower court on this issue, finding that "[t]he letters, in short, do not intrinsically prove the alleged FDCPA violation." *Id.* at 418. In other words, because the letters were not misleading on their face, summary judgment could not be awarded to the *consumer* absent extrinsic evidence (for example, consumer surveys) that the letters would mislead an unsophisticated consumer. *Durkin* also affirmed the district court's grant of summary judgment in favor of the defendant because "mere speculation that a collection letter confuses the unsophisticated debtor is not enough for an FDCPA plaintiff to survive an opposing debt collector's motion for summary judgment." *Id.* at 419. So that part of *Durkin* relied on the failure of the plaintiff there to produce evidence in discovery to stave off summary judgment—and this case is not at that stage yet. The claim should survive so long as it is not "apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." *Zemeckis*, 679 F.3d at 636 (internal quotation and citation omitted). To be sure, this is a close call, but given the governing standard at the dismissal-motion stage, the claim based on the combination of the first and second letters may move on to discovery.

14

It is worth noting that, although the claim survives for now, Velazquez will likely be required to do more that rely on the letters themselves in order to survive the summary-judgment stage. Because the second letter does not directly contradict the thirty-day validation period or explicitly demand immediate payment, Velazquez will likely need to produce some extrinsic evidence to support his claim that the second letter is confusing to the unsophisticated consumer. *See Durkin*, 406 F.3d at 415 ("[W]hen the letter itself does not plainly reveal that it would be confusing to a significant fraction of the population, the plaintiff must come forward with evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial." (citations omitted)).

### B. The Use of Aliases by Individual Debt Collection Agents

Count 2 of Velazquez's amended complaint alleges that when Fair Collections agents placed phone calls to Velazquez using aliases, instead of the agents' real names, Fair Collections violated 15 U.S.C. § 1692e. Am. Compl. ¶¶ 30-39. In his response to Fair Collections' motion to dismiss, Velazquez also asserts that the practice violates § 1692f. Pl.'s Resp. at 5. Fair Collections moves to dismiss the claim, arguing that the allegations do not state a claim for relief. Def.'s Br. at 12-15. As explained below, the Court agrees that Velazquez has not stated a claim under either provision of the FDCPA, and Velazquez's claim based on the use of aliases is dismissed.

### 1. § 1692e

Under § 1692e, "a debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. §

15

1692e. When determining whether a debt collector used false, deceptive, or misleading representations, the Court applies the same unsophisticated consumer standard used to evaluate § 1692g claims. *See McMillan*, 455 F.3d at 759; *Fields v. Wilber Law Firm*, 383 F.3d 562, 565-66 (7th Cir. 2004). Although § 1692e broadly prohibits the use of any "false" means to collect a debt, "[f]or purposes of § 1692e . . . a statement isn't 'false' unless it would confuse the unsophisticated consumer." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) (citation omitted). In other words, the test "is objective, turning . . . on the question of . . . whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (citation omitted). Furthermore, "[a] statement cannot mislead unless it is material, so a false but non-material statement is not actionable [under § 1692e]." *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 758 (7th Cir. 2009).

Fair Collections asserts several arguments in support of its motion to dismiss Velazquez's claims under § 1692e. It contends that its debt collection agents' use of aliases when making phone calls did not violate the provision because (1) nothing in the FDCPA prohibits the use of aliases; (2) using "desk names" is a common practice in the industry; (3) aliases were used consistently and did not impair Velazquez's ability to identify the caller; and (4) the identity of the caller is not relevant to the debtor. Def.'s Br. at 12–14.

As a matter of law, the use of aliases, as alleged in the amended complaint, do not amount to a material misrepresentation. Velazquez does not allege that the

16

collection agents failed to identify why they were calling or reveal that they were calling on behalf of Fair Collections. Am. Compl. ¶¶ 32–38. And according to the allegations of the amended complaint, the aliases were used consistently and referred to a particular person: collection agent Devon Paul Taylor called twice and used the same alias on both occasions, and collection agent Edward Smith called four times and used the same alias every time. *Id.* ¶¶ 32-33, 35-38. As long as an alias consistently refers to a particular person (consistent use allows the debtor to track which agent called), and the collection agent identifies the company the agent represents and why the agent is calling, then the use of an alias is immaterial to the debtor and does not run afoul of § 1692e. *See Beeders v. Gulf Coast Collection Bureau, Inc.*, 796 F. Supp. 2d 1335, 1339 (M.D. Fla. 2011)*; Youngblood v. GC Servs. Ltd. P'ship,* 186 F. Supp. 2d 695, 700 (W.D. Tex. 2002). Velazquez did not explain how the use of aliases by the collection agents was a material misrepresentation, and the bare allegation that the practice violates § 1692e is just a formulaic allegation of a legal conclusion, and is not enough to survive the dismissal motion. *See Iqbal,* 556 U.S. at 678–79. Because an unsophisticated consumer would not be misled by a Fair Collections agents' use of an alias, Velazquez's claim under § 1692e must be dismissed.

### 2. § 1692f

In his response brief, Velazquez raises an additional theory of liability with respect to the collection agents' use of aliases—15 U.S.C. § 1692f. Pl.'s Resp. at 5. But for the reasons explained below, Velazquez fails to state a claim under this provision as well.

17

Under § 1692f, a debt collector is prohibited from using any "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f, and the Court applies the same familiar unsophisticated consumer standard. *See McMillan*, 455 F.3d at 759. Velazquez alleges that the debt collection agents' use of aliases was an "unfair collection practice." Pl.'s Resp. at 5. But for the reasons explained above on Velazquez's § 1692e claim, even assuming the truth of all of the factual allegations, Velazquez cannot explain what was "unfair" about the use of aliases by the collection agents. Velazquez does not allege, for example, that the debt collection agents failed to identify the purpose of their call or the fact that they were calling from a debt collection agency. *See* Am. Compl. ¶¶ 32–38. That fact distinguishes the single case Velazquez cited in support of his argument under § 1692f. In *Knoll v. Allied Interstate, Inc.*, 502 F.Supp.2d 943 (D. Minn. 2007), calls by the debt collector came up on the debtor's caller identification device as "Jennifer Smith," with no reference to the debt collection company. *Id.* at 944. When the debtor in *Knoll* returned the call (which he assumed was from someone named Jennifer Smith), and asked to speak to Jennifer Smith, he was told that no one by that name worked for the debt collection agency. *Id. Knoll* concluded that a § 1692f claim based on "the practice of displaying false information via a caller identification device to deceive debtors into answering or returning the debt collector's call" was sufficient to withstand a motion to dismiss. *Id.* at 948. But Velazquez alleges no comparably deceptive or unfair practice. Because Velazquez's allegations about Fair Collections' use of aliases by its debt collection agents do not state a claim under either § 1692e or § 1692f, the claim is dismissed.

18

## IV. Conclusion

For the reasons stated above, Fair Collections' motion to dismiss [R. 36] is granted in part and denied in part. Only Velazquez's claim under § 1692g, based on Fair Collections' second collection letter (in combination with the first) will continue in the case. The status hearing scheduled for September 24, 2013 remains in place. Discovery may resume on the remaining claim. At the upcoming status, the parties should be prepared to report on the status of discovery.

ENTERED:

_____
Honorable Edmond E. Chang
United States District Judge

DATE: August 30, 2013